**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

JUSTIN A. W. JOHNSON,                                                          PLAINTIFF
#44511

v.                                      3:23CV00225-DPM-JTK

BJ CARTER, et al.                                                          DEFENDANTS

**ORDER**

Justin A. W. Johnson ("Plaintiff") is in custody at the Poinsett County, Arkansas, Detention Center (the "Detention Center").   He filed a pro se Complaint under 42 U.S.C. § 1983[1]  and paid the $402 filing and administrative fee to commence this action.   (Doc. Nos. 1, 15).   The Prison Litigation Reform Act ("PLRA") requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee, regardless of fee status.   28 U.S.C. § 1915A(a); Lewis v. Estes, 242 F.3d 375 (8th Cir. 2000) (per curiam) (§ 1915A's screening requirement applies regardless of fee status).

I.       **Screening**

The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a).   The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915A(b).   See also 28 U.S.C. § 1915(e) (screening requirements).

---

[1] Another inmate is listed as a plaintiff on the Complaint. (Doc. No. 1 at 1).   The Clerk of the Court opened a separate action for the additional plaintiff.   The related case is Williams v. Carter, et al., 3:23-cv-00226-DPM-JTK (E.D. Ark.).

An action is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).    Whether a plaintiff is represented by counsel or is appearing pro se, his complaint must allege specific facts sufficient to state a claim.   See Martin v. Sargent, 780 F .2d 1334, 1337 (8th Cir.1985).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction.   Haines v. Kerner, 404 U.S. 519, 520 (1972).   The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless.   Denton v. Hernandez, 504 U.S. 25, 32 (1992).

## II.    Discussion

### A.    Plaintiff's Complaint

Plaintiff filed a Complaint, Notice, and Amended Complaint.   (Doc. Nos. 1, 4, 16).   As the Court of Appeals for the Eighth Circuit has indicated, pleadings should be read together and construed so as to do justice.   Kiir v. N. Dakota Pub. Health, 651 F. App'x 567, 568 (8th Cir. 2016); Cooper v. Schriro, 189 F.3d 781, 783 (8th Cir. 1999) (per curiam).   Accordingly, the Court will treat Plaintiff's allegations as if set out in one Complaint.

In his original Complaint, Plaintiff sued Captain B.J. Carter, Lieutenant Regina Hindman, Smart Communications, Inc. CEO James Brown, and the unidentified CEO of Tiger Commissary.com (collectively, "Defendants").   (Doc. No. 1 at 2).   Plaintiff sued Defendants in their official capacities only.   (Id. at 2, 3).

Plaintiff "is a 100% service connected combat veteran awaiting trial."   (Id. at 6).   Plaintiff has a "ruptured L4 in [his] back."   (Id. at 5).   He also fractured both knee caps in the army, his ankles are still "messed up" from a collision, and he suffers from post traumatic stress disorder ("PTSD"), arthritis, and "loss of feeling bilaterally from Poinsett County Sheriff Department locking hand cuffs as tight as possible," along with "nerve damage in the first three digits thumb, index, & middle finger," also from the cuffs.   (Id. at 5, 7).

According to Plaintiff, Detox 1 and Detox 2 were being used for medical holds.   (Id. at 4). The original floor drains in Detox 1 and Detox 2 rusted out and were replaced with iron grates. (Doc. No. 1 at 4).   In Detox 2, the replacement grate was secured only by a zip tie in one corner. (Id.).   In Detox 1, the replacement grate was fully unsecured.   (Id.).   Plaintiff "stepped through the grate, jarring [his] hip."   (Id.).   Plaintiff says he tripped several times in Detox 1 and Detox 2.   (Id. at 5).   Defendant Hindman had been previously informed about the damage, and was told of "the collapse."   (Id. at 4).

Plaintiff also complains that he is being denied access to the law library and kiosk.   (Doc. No. 1 at 5).   The kiosk in Plaintiff's cell block had tipped over and thus was not usable.   (Id.). Plaintiff asked for paper grievances, but was told there were no more official grievance forms. (Id.).   Defendants Duffel and Hindman did not allow Plaintiff to go to other cell blocks to use the kiosk there.   (Id.).

Plaintiff was "forced to suck it up to go to C-Block."   (Id. at 5).   C-Block has a "special cell for disabled persons but no kiosk for disabled or reasonable access to the law library."   (Id.). C-Block inmates were allowed access to the kiosk for only one hour per day and "allowed out 8-12 for commissary."   (Doc. No. 1 at 5).   If Plaintiff sat to wait for the kiosk, he would lose his place in line.   (Id. at 5).   Plaintiff says the jammed keys on the kiosk "either run away or don't

work at all," which infuriates him. (Id. at 5, 6).   Plaintiff asked for "accommodation to sit or stand as need[ed] to work/write at own pace," but his requests have been denied.   (Id. at 6).

Plaintiff complains of numerous other conditions in the Detention Center, such as black mold, no sunlight or recreation yard time, and being in his cell for 23 hours per day.   (Id. at 6). He also complains of receiving off brand products from the commissary when photographs for the goods for sale show the goods to be name brand.   (Id. at 10).   Plaintiff does not make allegations against any Defendant in connection with these claims.

Plaintiff seeks damages and injunctive relief.   (Doc. No. 1 at 11).

In Plaintiff's Notice, he complains that Defendant Hindman is not answering his grievances on the kiosk in retaliation for Plaintiff "filing [a] § 1983 form."   (Doc. No. 4 at 1).   Further, the law library is not available on the new kiosk, and "the new one has no place to write and is even higher with no sitting option."   (Id.).

In Plaintiff's Amended Complaint, Plaintiff sued Administrative Assistant Gunner Wilson and L.P.N. Susan Duffel in addition to Defendants Hindman and Carter.   (Doc. No. 16).   He sued these Defendants in their personal and official capacities.   (Id. at 2).   Plaintiff says Defendant Wilson feigned ignorance about the Detention Center lacking the ability to transfer the money for the filing and administrative fees for this lawsuit.   (Id. at 4).   Plaintiff also says that his medical requests in connection with his left ear and dental meloxicam refill have been ignored.   (Id.).

## B.    Plaintiff May Not Represent the Claims of Others

"[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm."   Hollingsworth v. Perry, 570 U.S. 693, 704 (2013).   See also 42 U.S.C. § 1983 (establishing liability "to the party injured).   To the extent a plaintiff alleges that a defendant's actions harmed others, the plaintiff generally lacks

standing to bring that claim.   Hodak v. City of St. Peters, 535 F.3d 899, 904 (8th Cir. 2008) ("As a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" (internal citation omitted)).

Further, pro se litigants are not authorized to represent the rights, claims and interests of other parties in any cause of action, including a class action lawsuit.   Fymbo v. State Farm Fire and Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others"); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975); cf. Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994) ("A nonlawyer . . . has no right to represent another entity.").

The Complaint in this case identifies another individual, Bryan Williams, as a plaintiff. (Doc. No. 1 at 1).   And the Complaint contains allegations regarding Mr. Williams.   (Id. at 5, for example).   But Plaintiff may pursue only his own claims in this case.   To the extent Plaintiff seeks to bring claims on behalf of other inmates, those claims fail.

### C.    Commissary

According to Plaintiff, he received off brand products at the commissary despite photographs of the products offered featuring brand name products.   The Court notes that there is no constitutional right to purchase goods from a commissary.   Amos v. Stolzer, case no. 1:14CV63 SNLJ, 2014 WL 6473596, *9 (E.D. Mo. Nov. 18, 2014) (and cases cited therein).   To the extent Plaintiff complains that he did not receive the same name brand items that appeared in the pictures, those allegations do not rise to the level of a constitutional violation.

### D.    The CEO Defendants

Plaintiff sued Smart Communications CEO James Brown and the unidentified CEO of TigerCommissary.com.   Plaintiff made no allegations against either Defendant.   Both CEOs are

private actors.   To be subject to a claim under § 1983, "a private actor must be a 'willful participant in joint activity with the State' in denying plaintiff's constitutional rights."   Magee v. Trustees of Hamline University, Minn., 747 F.3d 532, 536 (8th Cir. 2014) (quoting Dossett v. First Bank, 399 F.3d 940, 947 (8th Cir. 2005)).   "A plaintiff 'must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and state actor.'" Pendleton v. St. Louis County, 178 F.3d 1007, 1011 (8th Cir. 1999) (internal citation omitted).

Plaintiff did not make such allegations, so there is no basis for his § 1983 claims against the CEO Defendants.

### E.   Conditions of Confinement

Plaintiff complained about certain conditions of his confinement, such as black mold and spending 23 hours in his cell, but he did not make allegations against any Defendant in connection with this claim.   Because liability under § 1983 is based on an individual's own acts or omissions, Plaintiff's conditions of confinement claims as currently pled fail to state a claim on which relief may be granted.

### F.   Grievance Procedure

Plaintiff complains that he was denied grievance forms and that his grievances went unanswered.   These claims do not rise to the level of a violation of Plaintiff's Fourteenth Amendment rights.   Benton v. Kelley, 784 F. App'x 472, 473 (8th Cir. 2019) (citing Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (prison's grievance procedures confer no substantive rights; they are procedural rights only, which do not give rise to protected liberty interest under the Fourteenth Amendment)).

### G.   Deliberate Indifference to Serious Medical Needs

Plaintiff alleges certain medical requests have been ignored.

Prison officials violate a pretrial detainee's rights under the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference to his serious medical needs. Ivey v. Audrain County, Missouri, 968 F.3d 845, 848 (8th Cir. 2020).   To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Id.   "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs."   Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).   "Mere negligence is not sufficient to support a cause of action under § 1983."   Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993).

Plaintiff does not describe his medical conditions or make allegations against any Defendant in connection with this claim.   As such, there is no basis for liability under § 1983.

### H.   Americans With Disabilities Act

Plaintiff has a ruptured disc in his back, his knee caps were fractured in the past, his ankles are "messed up," he has nerve damage in fingers and "loss of feeling bilaterally," and he suffers from PTSD.   Plaintiff says he has asked for accommodation and he alludes to "a long standing Act."   (Doc. No. 1 at 7).   The Court interprets Plaintiff's allegations as raising an Americans With Disabilities Act ("ADA") claim.

Plaintiff's claims arise under Title II of the ADA.   Pennsylvania Dep't. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).   Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

> To state a claim under Title II of the ADA, a Plaintiff must allege (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [prison's] services, programs, or activities, or was otherwise subjected to discrimination by the [prison]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

Rinehart v. Weitzell, 964 F.3d 684, 688 (8th Cir. 2020).

Discrimination may be in the form of disparate treatment or failure to make reasonable accommodations. Peebles v. Potter, 354 F.3d 761, 765 (8th Cir. 2004). When a plaintiff alleges a defendant failed to provide reasonable accommodation, "the 'discrimination' is framed in the terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." Id. at 767.

A "qualified individual with a disability" is an individual "who, with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The ADA defines disability as "a physical or mental impairment that limits one or more major life activities of such individual; a record of such impairment; or being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Major life activities are described as caring for oneself, performing manual tasks, lifting, bending, learning, reading, as well as functions of the immune system, among numerous other things. 42 U.S.C. § 12102(2)(A), (B). "'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). In determining whether a plaintiff's disability substantially limits a major life activity, courts may consider, as compared to others,

"'the difficulty, effort, or time required [for the plaintiff] to perform a major life activity," among many other factors.   29 C.F.R. § 1630.2(j)(4)(i), (ii).

Plaintiff sued Defendants in their personal and official capacities.   "[I]ndividuals are not subject to liability under Title II" of the ADA.   Johnson v. Neiman, 504 Fed. Appx. 543, 545 (8th Cir. 2013) (per curiam).   Any individual capacity ADA claims fail.

Further, Plaintiff's ADA claims are made in the context of grievances on the kiosks. Plaintiff seeks damages, among other relief.   But a claim for damages under the ADA is limited to "conduct that actually violates the Fourteenth Amendment."   U.S. v. Georgia, 546 U.S. 151, 159 (2006).   Because Plaintiff has no protected liberty interest in the Detention Center's grievance procedure, Plaintiff cannot establish a constitutional violation based on his allegations.   As a result, monetary damages are not available to Plaintiff as a form or relief for his ADA claim.   See, for example, Barnett v. Kelley, No. 1:16-CV-00156 BSM/BD, 2017 WL 629460, at *2 (E.D. Ark. Jan. 20, 2017), report and recommendation adopted as modified, No. 1:16-CV-00156 BSM, 2017 WL 628606 (E.D. Ark. Feb. 15, 2017), aff'd, 698 F. App'x 324 (8th Cir. 2017) (plaintiff's claim for monetary damages under ADA failed where plaintiff had no liberty interest in being admitted to work release program).

Plaintiff also sought injunctive relief.   The Court needs further information to properly screen these claims.   Plaintiff identifies his ailments, but Plaintiff does not describe how the ailments affect him.   What are the affects of his ruptured disc, previously fractured knee caps, "messed up" ankles, PTSD, and injuries from being handcuffed too tightly? How do the ailments limit Plaintiff's use of the kiosks?

I.       **Retaliation**

Plaintiff alleges that Defendant Hindman is not answering his grievances in retaliation for Plaintiff "filing [a] § 1983 form."   (Doc. No. 2 at 1).

To state a § 1983 retaliation claim, a plaintiff must plead that: (1) he was engaged in a protected activity; (2) the defendant "took official adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013)   (internal citation omitted); De Rossitte v. Correct Care Solutions, LLC, 22 F.4th 796, 804 (8th Cir. 2022).   Establishing retaliatory animus is crucial to a plaintiff's retaliation claim. See Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996).   See also Bitzan v. Bartruff, 916 F.3d 716, 717 (8th Cir. 2019) (affirming summary judgment where plaintiff did not allege facts connecting defendants to the challenged actions); Antonelli v. Tipton, Case No. 08-3123, 2009 WL 4825169 at *904 (8th Cir. Dec. 16 2009) (per curiam) (plaintiff "failed to state a retaliation claim because he . . . failed to allege which defendants were involved in or affected by his grievances.").   As explained in Rienholtz v. Campbell, "an inmate cannot immunize himself . . . . merely by filing [lawsuits] and then claiming that everything that happens to him is retaliatory." 64 F. Supp. 2d 721, 733 (W.D. Tenn. 1999) (internal citation omitted).   "If that were so, then every prisoner could obtain review of non-cognizable claims merely by filing a lawsuit or grievance and then perpetually claiming retaliation."   Id.

As currently pled, Plaintiff's allegations against Defendant Hindman to not establish retaliatory animus.   Plaintiff does not explain which § 1983 form he is talking about or if Defendant Hindman was a party to any earlier lawsuit.

**J.      Permissive Joinder of Defendants**

Plaintiff made a number of claims against a number of Defendants.   At this point, it is not clear whether all Defendants are properly joined in this action.   Rule 20 of the Federal Rules of Civil Procedure governs permissive joinder of parties.   FED. R. CIV. P. 20.   Under Rule 20, Defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2)(A)-(B).   "On motion or on its own, the court may at any time, on just terms, add or drop a party."   FED. R. CIV. P. 21.

If Plaintiff chooses to submit an Amended Complaint, he should include only Defendants who are properly joined in one action.

**K.      Superseding Amended Complaint**

Plaintiff may amend his Complaint to cure the defects explained above.   If Plaintiff decides to amend, Plaintiff should submit to the Court, within thirty (30) days of the entry date of this Order, a superseding Amended Complaint that contains in a single document his claims against all Defendants he is suing.   Plaintiff is cautioned that an Amended Complaint renders his original Complaint without legal effect.[2]   Only claims properly set out in the Amended Complaint will be allowed to proceed.   Therefore, Plaintiff's Amended Complaint should: **1) name as a Defendant each party he believes deprived him of his constitutional rights and whom he wishes to sue**

---

[2] "An amended complaint 'ordinarily supersedes the original and renders it of no legal effect.'" In Home Health, Inc. v. Prudential Ins. Co. of America, 101 F.3d 600, 603 (8th Cir. 1996), quoting International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1994) (other citations omitted).

in this action; 2) provide specific facts against each named Defendant in a simple, concise, and direct manner, including dates, times, and places if possible;   3) indicate whether he is suing each Defendant in his/her individual or official capacity, or in both capacities; 4) explain the reasons for an official capacity claim, if he makes one; 5) explain how each defendant's actions harmed him personally; 6) explain the relief he seeks; and 7) otherwise cure the defects explained above and set out viable claims.

If Plaintiff does not submit an Amended Complaint, I may recommend that his Original Complaint be dismissed.  See 28 U.S.C. § 1915A(a); Loc. R. 5.5(c)(2).

## III.   Conclusion

IT IS, THEREFORE, ORDERED that:

1.      If Plaintiff wishes to submit an Amended Complaint for the Court's review, he must file the Amended Complaint consistent with the above instructions within thirty (30) days from the date of this Order.  If Plaintiff does not submit an Amended Complaint, I may recommend that his Original Complaint be dismissed.  See 28 U.S.C. § 1915A(a); Loc. R. 5.5(c)(2).

2.      The Clerk of the Court is directed to mail Plaintiff a blank 42 U.S.C. § 1983 Complaint form.

Dated this 4th day of   December, 2023.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE